UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAXENE SUNDSTROM,

                    Plaintiff,

      v.

OCEAN REEF MEDIA LLC et al.,

                  Defendants.

CASE NO. 3:26-cv-05036-DGE

ORDER ON MOTIONS TO
DISMISS (DKT. NO. 26, 29)

Before the Court are Defendant The Progressive Corporation's ("Progressive") and Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") respective motions to dismiss Plaintiff's complaint (Dkt. No. 1-1) for failure to state a claim.  (Dkt. Nos. 26, 29.)  Plaintiff opposes the motions.  (Dkt. Nos. 30, 31.)  For the following reasons, the Court GRANTS the motions.

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 1

# I    BACKGROUND

Plaintiff filed her complaint against Defendants[1] in Clark County Superior Court on December 15, 2025.  (Dkt. No. 1-1.)  State Farm subsequently removed the action to this Court. (Dkt. No. 1.)

Plaintiff alleges that she registered her cell phone number on the Federal Trade Commission's national Do Not Call ("DNC") registry on July 2, 2025.  (*Id.* at 5.)  Plaintiff never consented to solicitation from any Defendant.  (*Id.*)  For the last four years, Plaintiff has received "unwanted text messages and phone calls soliciting insurance services" from Defendants Ocean Reef Media, LLC, Maple Coverage, LLC, and Curb Sure LLC (collectively the "Ocean Reef Defendants").  (*Id.*)  Plaintiff alleges that between July 15, 2025 and October 27, 2025, she received 70 text messages from Ocean Reef or an agent acting on behalf of Ocean Reef, and "each text message encourage[ed] the purchase of insurance services for" State Farm and Progressive.  (*See id.* at 5–8.)  Plaintiff contends Curb Sure LLC and Maple Coverage sent her links to their websites, both of which advertised insurance services for State Farm and Progressive.  (*Id.* at 9.)

On October 4, 2025, Plaintiff wrote both Progressive and State Farm "to make company specific" DNC requests.  (*Id.* at 10.)  The letters stated Plaintiff had received "a bunch of unwanted text messages from a *MapleCoverage.com* trying to sell her auto insurance from Progressive and State Farm[,]" she "didn't want telephone solicitations[,]" and requested that Progressive and State Farm tell "'everyone soliciting for [them] to put [her] number on their do not call list.'"  (*Id.*)  Plaintiff contends Progressive and State Farm forwarded Plaintiff's DNC

---

[1] Defendants are a collection of insurance companies and telemarketers.  (*See* Dkt. No. 1-1 at 2–4.)

letter to Ocean Reef Media LLC because they allegedly "knew Ocean Reef operated *MapleCoverage*.com[,]" and knew "every website Ocean Reef was using to sell their insurance services because [they] paid Ocean Reef for traffic and business generated by each of Ocean Reef's websites[.]" (*Id.* at 10–11.)

Plaintiff alleges the Ocean Reef Defendants received her DNC request from State Farm and Progressive yet continued texting Plaintiff telephone solicitations on behalf of Progressive and State Farm. (*Id.* at 11.) Plaintiff alleges Progressive and State Farm knew or should have known the Ocean Reef Defendants did not stop soliciting Plaintiff. (*Id.* at 12.) On October 24, 2025, Plaintiff sent a follow-up DNC letter to Progressive and State Farm, alleging that their respective logos were seen on certain telemarketer websites. (*See id.* at 12–13.)

Plaintiff seeks individual relief and relief on behalf of six proposed classes of similarly situated consumers. (*Id.* at 13–14.) She brings causes of action under the Telephone Consumer Protection Act ("TCPA"), the Washington Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("WCPA") and seeks injunctive relief and monetary damages. (*Id.* at 19–25.)

On February 18, 2026, Progressive and State Farm both filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief could be granted. (Dkt. Nos. 26, 29.)

## II    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston*

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 3

*v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true [even if doubtful in fact]."  *Id*.  The complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (internal citation omitted).

Finally, "in a case alleging the same claim[s] against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group."  *Trusov v. Or. Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023); *see Evans v. Sherman*, No. 1:19-cv-00226-DAD-BAM(PC), 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together" makes it "impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants), *report and recommendation adopted*, No. 1:19-cv-00226-DAD-BAM(PC), 2021 WL 136394 (E.D. Cal. Jan. 14, 2021); *Wright v. City of Santa Cruz*, No. 13–cv–01230–BLF, 2014 WL 5830318, at *5

(N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability.").

### III     DISCUSSION

#### A.  TCPA

As an initial matter, Progressive and State Farm argue Plaintiff's TCPA claims should be dismissed because she does not adequately allege they are vicariously liable for the text messages.  (Dkt. Nos. 29 at 10; 26 at 5.)

The TCPA prohibits making telemarketing calls to residential telephone subscribers who have registered their telephone numbers on the DNC registry.  *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).  Persons who have registered their numbers on the DNC who receive more than one telemarketing call in a 12-month period "by or on behalf of the same entity" have a private right of action.  *See* 47 U.S.C. § 227(c)(5).  Congress has delegated to the Federal Communications Commission ("FCC") the authority to make rules and regulations to implement the TCPA, and, therefore, "courts should defer to the FCC's interpretation of a term in the TCPA, so long as the term is not defined by the TCPA and the FCC's interpretation is reasonable."  *See Frank v. Cannabis & Glass, LLC*, No. 2:19-cv-00250-SAB, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009)).

For a call to fall under the TCPA, the caller must either (1) directly make the call, or (2) have an agency relationship with the person who made the call.  *See Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("There are two potential theories of liability [for a TCPA violation]: (1) direct liability; and (2) vicarious liability.").  Direct liability is inapplicable here as the Parties agree neither Progressive nor State Farm actually sent Plaintiff the text

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 5

messages.  (*See* Dkt. Nos. 30 at 5 (Progressive); 31 at 5 (State Farm).)  Therefore, Plaintiff must sufficiently allege that Progressive and State Farm are vicariously liable for the texts at issue.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller."  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd sub nom. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations.").  "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).  A plaintiff cannot rely solely upon allegations that a call was "made simply to aid or benefit the seller—even if agency principles would not impose vicarious liability on the seller for the call."  *Cf. In the Matter of the Joint Petition Filed by Dish Network*, 28 FCC Rcd. 6574, 6585 (F.C.C. 2013).  Instead, vicarious liability must be based upon at least one of the following theories: (1) apparent authority, (2) actual authority, or (3) ratification.  *Jones v. Royal Administration Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018).

A plaintiff need not separately plead a particular theory of vicarious TCPA liability to proceed on that theory.  *Cf. McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471, at *1 (9th Cir. April 5, 2022) (concluding that plaintiffs did not waive an apparent authority theory of vicarious TCPA liability and observing that "plaintiffs did not waive their vicarious liability arguments based on a failure to specifically allege them in the consolidated

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 6

complaint"). However, in her response briefs, Plaintiff relies only on the theory of apparent authority. (Dkt. Nos. 31 at 6; 30 at 6.)

"'Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" *McCurley,* 2022 WL 1012471, at *2 (quoting RESTATEMENT (THIRD) OF AGENCY § 2.03 (AM. L. INST. 2006)). "Apparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of *something said or done by the [principal]* on which [the third party] reasonably relied." *NLRB v. District Council of Iron Workers of the State of California and Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997) (emphasis added). Such statements can include "direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates." *NLRB v. Donkin's Inn, Inc.*, 532 F.2d 138, 141 (9th Cir. 1976).

Plaintiff fails to allege sufficient facts to establish apparent authority between Progressive/State Farm and the Ocean Reef Defendants. Plaintiff does not show that either *Progressive or State Farm* did or said something sufficient to create a reasonable belief that the Ocean Reef Defendants had authority to act, in this case to initiate calls,[2] on behalf of the insurance companies. Instead, Plaintiff argues (1) both Progressive and State Farm's logos were

---

[2] State Farm also argues there is no liability for text messages under § 227(c)(5), because they are not telephone "calls." (Dkt. No. 29 at 13–15.) However, as State Farm acknowledges, this Court has previously concluded text messages remain actionable under § 227(c)(5). *See Barton v. Delfgauw*, No. 3:21-cv-05610-DGE, 2025 WL 2402131, at *3 n.1 (W.D. Wash. Aug. 18, 2025).

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 7

on the Ocean Reef Defendants' websites[3] and (2) there was temporal proximity between when the insurance companies received Plaintiff's DNC letter and when the Ocean Reef Defendants ceased texting Plaintiff.  (Dkt. No. 31 at 6–7; 30 at 6–7.)  As to the insurance companies' logos, Plaintiff cannot show apparent authority by allegations that the alleged agent, the Ocean Reef Defendants, "claimed authority or purported to exercise it."  *NLRB*, 124 F.3d at 1099; *see also Courtland v. GCEP-Surprise, LLC*, No. CV-12-00349-PHX-GMS, 2013 WL 3894981, at *9 (D. Ariz. July 29, 2013) (collecting cases showing that mere use of franchisor logos, signage, and marketing material by a franchisee "is not sufficient manifestation by the franchisor to establish apparent authority.").  Furthermore, Plaintiff does not allege State Farm or Progressive authorized the Ocean Reef Defendants to use their name and logo.

Plaintiff also contends both Progressive and State Farm exerted control over the Ocean Reef Defendants by instructing them how to interact with Plaintiff following her DNC letters. After Plaintiff sent the October 4, 2025 letter to the insurance companies complaining about

---

[3] In response to State Farm's motion to dismiss, Plaintiff attaches as an exhibit an October 3, 2025 screenshot from MapleCoverage.com, showing that the website advertised State Farm and Progressive insurance policies using the companies' logos.  (*See* Dkt. No. 31-1.)  In reviewing a motion to dismiss under Rule 12(b)(6), a court may "consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").  However, the court cannot consider any documents incorporated by reference in a complaint if the authenticity of those documents is contested.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–682 (9th Cir. 2006).  The requirement of mutual agreement regarding authenticity is consistent with the requirements for taking judicial notice of documents.  *See* Fed. R. Evid. 201(b)(2) (authorizing judicial notice of facts "not subject to reasonable dispute" found in sources "whose accuracy cannot reasonably be questioned").  Because State Farm and Progressive contest the validity of this exhibit (*see* Dkt. Nos. 38 at 5 n.2; 44 at 7), the Court does not consider it.

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 8

Maple Coverage, the Ocean Reef Defendants switched to sending Plaintiff spam texts from Curb Sure—which Plaintiff alleges is proof that the insurance companies "exercised [their] control over the Ocean Reef Defendants by instructing them to send the spam texts from another number which linked to a different website." (Dkt. No. 31 at 6; 30 at 6.)  Once Plaintiff sent the October 24, 2025 DNC letter, the messages from the Ocean Reef Defendants ceased, which Plaintiff contends was a "clear manifestation" of Progressive and State Farm's apparent authority over the Ocean Reef Defendants.  (Dkt. No. 31 at 6–7; 30 at 7.)  But a plaintiff must allege facts, not conclusions, and the court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual allegations.  *See, e.g., Sprewell*, 266 F.3d at 988.  Plaintiff's allegations are entirely speculative.  *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) *(*rejecting the logical fallacy of *post hoc, ergo propter hoc*, literally, "after this, therefore because of this.").  Furthermore, these allegations fail to point out any specific action by State Farm or Progressive.

The Court DISMISSES Plaintiff's TCPA claims (Counts One, Three, Four, Five, Six, and Eight (to the extent Plaintiff relies on the TCPA to seek injunctive relief)) with leave to amend.

### B. CEMA and WCPA

The Parties agree that Plaintiff's CEMA and WCPA claims rise and fall together (*see* Dkt. Nos. 29 at 19; 31 at 11; 44 at 10); therefore, the Court will address them together.  CEMA provides that,

> No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages.

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 9

CEMA defines "assist the transmission" as actions taken by a person to provide substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit" a commercial electronic text message[4] "when the person providing the assistance knows or consciously avoids knowing that the initiator of" the text message will or intends to violate the WCPA.  Wash. Rev. Code § 19.190.010(1).  Although CEMA does not provide a private right of action for damages, recipients of unsolicited commercial text messages can sue for injunctive relief.  *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153 n.3 (Wash. 2017) ("While an action for monetary damages is limited to phishing, we note that a plaintiff may bring an action to enjoin any CEMA violation."); *see also* Wash. Rev. Code § 19.190.090(1) ("A person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations.").

In addition to the injunctive relief available under CEMA, a recipient of an unlawful commercial text message can bring a civil action against the sender under the WCPA for either statutory or actual damages.  *See Gragg v. Orange Cab Co., Inc.*, 145 F. Supp. 3d 1046, 1051 (W.D. Wash. 2015).  CEMA defines the practice of sending such a commercial text message as "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the [WCPA]."  Wash. Rev. Code § 19.190.060(2).  "Thus, 'a violation of the [WCPA] occurs when a sender' sends a message in violation of CEMA."  *Bottoms v. Block, Inc.*, No. 23-1969 MJP, 2024 WL 1931690, at *2 (W.D. Wash. May 2, 2024) (quoting Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (April 6, 1998)).  Said another way, violations of CEMA's text message prohibition are *per se* violations of the CPA.  *See Wright*, 406 P.3d at 1154.

---

[4] "Commercial electronic text message" is defined as "an electronic text message sent to promote real property, goods, or services for sale or lease."  Wash. Rev. Code § 19.190.010(3).

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 10

Plaintiff contends each Defendant "either initiated or substantially assisted in the transmission of text messages to Plaintiff that promoted the sale of goods or services."  (Dkt. No. 1-1 at 21.)  However, Plaintiff fails to assert *any* facts showing State Farm or Progressive substantially assisted in the transmission of the text messages to her.  *Cf. Bottoms*, 2024 WL 1931690, at *4 (finding defendant's assistance to be substantial where it created a process of "easy steps for users to follow in order for the referral message to be sent"); *Moore v. Robinhood Fin. LLC*, No. 2:21-cv-01571-BJR, 2022 WL 3082969, at *4 (W.D. Wash. Aug. 3, 2022) (finding substantial assistance although defendant did not retain full control over their customers' final text messages, because it "developed and ordered the entire 'chain of events' leading to the messages' formulation and transmission"); *Wright v. Lyft, Inc.*, No. 2:14-CV-00421 MJP, 2016 WL 7971290, at *4 (W.D. Wash. Apr. 15, 2016) (finding a defendant's assistance to be substantial where plaintiff alleged that defendant started off "a chain of events" that led to the transmission of a commercial text message).

Thus, Plaintiff's CEMA and WCPA claims (Counts Two, Seven, and Eight (to the extent it relies on the WCPA for injunctive relief)) are DISMISSED with leave to amend.[5]

**C. Leave to Amend**

Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ. P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

---

[5] Although State Farm and Progressive's claim that Washington Revised Code § 19.190.040 does not itself provide a private right of action is correct (Dkt. Nos. 29 at 18; 26 at 11), that does not lead to the conclusion that Plaintiff's claim must be dismissed with prejudice.  In *Wright*, the Washington Supreme Court explained that it was the legislature's intent for CEMA violations "to be brought under the [WCPA]."  406 P.3d at 1152.  To the extent Plaintiff asserts a CEMA claim not based upon the WCPA, that claim is DISMISSED.  In an amended complaint, Plaintiff may assert a WCPA claim based on a CEMA violation.

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 11

Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

Here, because this is the first time the Court has ruled on the sufficiency of Plaintiff's complaint, and it is possible the deficiencies the Court has identified above may be cured by the allegation of additional facts, Plaintiff is granted leave to amend.

## IV    CONCLUSION

Accordingly, and having considered Defendants' motions to dismiss, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Progressive and State Farm's motions to dismiss (Dkt. Nos. 26, 29) are GRANTED. Any amended complaint must be filed no later than June 5, 2026.

Dated this 15th day of May, 2026.

David G. Estudillo
United States District Judge

ORDER ON MOTIONS TO DISMISS (DKT. NO. 26, 29) - 12